**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

STEPHEN C. LANGA,

      Petitioner,

v.                                      Case No. 8:13-cv-2569-T-36AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Petitioner Stephen C. Langa, an inmate in the Florida Department of Corrections proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1).  He challenges his convictions entered by the Circuit Court for the Sixth Judicial Circuit, Pasco County, Florida.  Respondent filed a response (Dkt. 22), and Langa filed a reply (Dkt. 33).  Upon review, the petition must be denied.

## PROCEDURAL HISTORY

Langa pleaded no contest to four counts of robbery and two counts of trafficking in illegal drugs.  (Dkt. 24, Ex. 2, p. 96.)  He received concurrent sentences of 15 years in prison on all counts.  (*Id.*, pp. 100-02.)  The sentences on the trafficking charges were minimum mandatory terms.  (*Id.*, p. 100.)  Langa did not file a direct appeal.  Langa's motions for postconviction relief under Florida Rule of Criminal Procedure 3.850 and motions to correct illegal sentence under Rule 3.800(a) were rejected by the state court.  (Dkt. 1-1, pp. 25-28; Dkt. 24, Exs. 5, 5A, 11, 12, 18; Dkt. 40, Exs. 25, 26.)

## TIMELINESS OF LANGA'S FEDERAL HABEAS PETITION

Respondent contends that Langa's federal habeas petition is untimely.  The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a one-year period of limitation for filing a § 2254 federal habeas petition.  This period runs from the later of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A). The limitation period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending. . ." 28 U.S.C. § 2244(d)(2).

The state court judgment was entered on August 29, 2008.  It became final upon expiration of the 30-day period to file a direct appeal. *See Booth v. State*, 14 So.3d 291, 292 (Fla. 1st DCA 2009); *Gust v. State*, 535 So.2d 642, 643 (Fla. 1st DCA 1988). Accordingly, after his judgment became final, Langa's AEDPA limitation period began running on September 29, 2008.

Langa apparently filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a) in April 2009.  Specifically, the date stamp on the motion reflects Langa provided it to prison officials for mailing on April 20, 2009, after 204 days of untolled time passed.  (Dkt. 1-1, p. 25.)  The state court record does not reflect any docket entry showing this motion was received and docketed by the Clerk of the State Circuit Court in April 2009.  (Dkt. 24, Exs. 3, 3A.)  In 2013, however, it appears that Langa filed a motion to hear and rule.  (Dkt 1-1, p. 27.)  As a result, the state court dismissed Langa's underlying Rule 3.800(a) motion, noting that it was "filed in April of 2009."  (Dkt. 1-1, p. 27.)  It is clear that the state court accepted the motion as having been filed in April 2009.  Accordingly,

this Court considers the April 20, 2009 Rule 3.800(a) motion as a tolling application for determining timeliness under § 2244(d).  The state court's order of dismissal was filed on April 12, 2013.  (*Id.*, pp. 27-28.)  Langa did not file an appeal.  At this time, however, his appeal of the state court's order denying a May 1, 2012 Rule 3.800(a) motion was already pending.  The state court's order was affirmed on June 19, 2013, and the appellate court's mandate issued on August 20, 2013.  (Dkt. 24, Exs. 20, 23.)  Another 44 days, for a total of 248 days of untolled time, passed before Langa filed his federal habeas petition on October 3, 2013.  Therefore, the habeas petition is timely under § 2244(d).

### EXHAUSTION OF STATE COURT REMEDIES; PROCEDURAL DEFAULT

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion.  28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).  A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary."  *Fruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal

and factual bases for his claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief.  *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).  The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999).  *See also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that

they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## DISCUSSION

Langa raises nine claims for relief in his federal habeas petition. The record reflects that Langa's four robbery charges resulted from his taking oxycontin from pharmacies. His trafficking charges were based on the amount of oxycontin that he took on two of these occasions. In Ground One, Langa argues that his plea to the trafficking charges was involuntary due to an insufficient factual basis. In Ground Two, Langa alleges that his minimum mandatory sentences are illegal. In Ground Three, he alleges (A) that his plea was involuntary because the trial court failed to have him evaluated for competency and (B) that he was incompetent to enter his plea. In Ground Four, he argues that counsel was ineffective for failing to secure a written order that he undergo a competency evaluation and

for failing to determine whether he could make a knowing, intelligent decision to enter a plea.  In Ground Five, Langa asserts that his plea was involuntary because counsel failed to advise him of his "alternative choices."   In Ground Six, Langa argues that counsel was ineffective for not deposing Trisha Glenn, the victim of two of the robberies.  In Ground Seven, he contends that counsel was ineffective for failing to adequately investigate and prepare a defense given the alleged lack of factual support for the charges.  In Ground Eight, Langa argues that counsel was ineffective for not addressing the elements of the crimes with him and not ensuring that he understood the nature of the charges to which he pleaded.  In Ground Nine, he alleges that the State failed to disclose exculpatory evidence and that counsel was ineffective for allowing an allegedly erroneous statement by Glenn to go uncorrected.

Voluntariness Of Langa's Plea

The record reflects that Langa's plea was voluntary.  The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review.'" *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)).

Although a defendant's statements during a plea colloquy are not insurmountable, "the representations of the defendant, his lawyer, and the prosecutor at [a plea hearing],

as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

The change of plea hearing transcript reflects the following exchanges during the plea colloquy:

> THE COURT: And you read over this three-page plea form with your attorney?
>
> DEFENDANT LANGA: Yes, I did.
>
> THE COURT: And today it's my understanding that you're entering a plea of no contest to four counts of robbery, second-degree felonies, each carrying 15 years in prison maximum possible.
> And on the trafficking illegal drugs, they're still first-degree felonies, they carry up to 30 years in prison, and the State has amended them such that they would reflect a 15-year minimum mandatory,[1] and $100,000 fine on each of those counts.  Are you aware of that, sir?
>
> DEFENDANT LANGA: Yes, sir.
>
> THE COURT: Do you understand by entering this plea to these charges, you're waiving your constitutional rights?
>
> DEFENDANT LANGA: Yes, sir.
>
> THE COURT: You're waiving your right to a trial by jury, and because of your plea, there will not be a trial; the right to require the State to prove the charges beyond a reasonable doubt; the right to confront and cross-examine witnesses; the right to testify; also the right not to be a witness against

---

[1]  The record reflects that the trafficking charges carried 25-year minimum mandatory terms but that the State amended them to carry 15-year minimum mandatory terms in accordance with the plea agreement. (Dkt. 24, Ex. 2, pp. 93-95.)

yourself; the right to call witnesses on your behalf; the right to present any defenses that might apply; and also the right to appeal all matters related to the judgment, including guilt or innocence except for post-conviction matters.

Sir, do you understand all those rights you're waiving by entering this plea?

DEFENDANT LANGA: Yes.

THE COURT: Are you entering this plea freely and voluntarily?

DEFENDANT LANGA: Yes, sir.

THE COURT: Has anyone threatened you, promised you anything, or coerced you into entering this plea?

DEFENDANT LANGA: No, sir.

THE COURT: Are you entering this plea because it's in your own best interest to do so?

DEFENDANT LANGA: Yes, sir.

THE COURT: Are you under the influence of drugs or alcohol today?

DEFENDANT LANGA: No, sir.

THE COURT: Have you ever been diagnosed with a mental or emotional illness?

DEFENDANT LANGA: Yes.

THE COURT: What is that, sir?

DEFENDANT LANGA: Major depression.  General anxiety.

THE COURT: Is that in any way affecting the decision you're reached to enter this plea today?

DEFENDANT LANGA: No, sir.

THE COURT: And are you taking medication for that at this time?

DEFENDANT LANGA: Yes.

THE COURT: Is the medication in any way clouding your judgment today as

to entering this plea?

DEFENDANT LANGA: No, sir.

THE COURT: Are you satisfied with the help and advice your attorney has given you?

DEFENDANT LANGA: Yes.

THE COURT: Has she reviewed with you what in the way of evidence would be required by the State to prove these charges and discussed with you all possible defenses?

DEFENDANT LANGA: Yes, sir.

. . .

THE COURT: For purposes of the plea, [counsel], do you stipulate to the affidavits and approve?

[COUNSEL]: Yes, Judge.

THE COURT: I find there's sufficient factual basis, a prima facie showing as to each of the counts in each of the files.
    Sir, I accept your plea.  I find you to be alert and intelligent, you freely and voluntarily have entered your plea, you understand your rights and have waived your rights upon the advice of competent counsel with whom you've expressed satisfaction.

(Dkt. 24, Ex. 2, pp. 96-100.)  The record reflects that Langa understood the charges to which he pleaded, the maximum penalties he faced, and the rights he waived by electing not to proceed to trial.  It also shows that Langa was not forced, coerced, or threatened into entering his plea.  Accordingly, the record demonstrates that Langa's plea was voluntary.

Waiver Of Nonjurisdictional Claims Not Challenging Voluntariness Of The Plea

Langa's plea of nolo contendere waives all nonjurisdictional claims that do not concern the plea's voluntariness.  *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all nonjurisdictional challenges to

the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained.").[2]  *See also Tollett v. Henderson*, 411 U.S. 258, 267 (1973)  ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").  Grounds Six, Seven, and Nine are waived because they raise nonjurisdictional claims involving matters prior to the plea but do not challenge the voluntariness of the plea.

<u>Procedurally Defaulted Claims</u>

Langa may  challenge the voluntariness of his plea.  *See Wilson*, 962 F.2d at 997. *See also United States v. Broce*, 488 U.S. 563, 569 (1989) ("[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary."); *Duhart v. United States*, 556 Fed. App'x 897, 898 (11th Cir. 2014) (Although "a defendant's knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings . . . a defendant can still maintain an attack on the voluntary and knowing nature of the guilty plea itself.").  To the extent Langa's remaining claims challenge the voluntariness of the plea or concern the sentence imposed after the plea, however, they are procedurally defaulted.

---

[2]  Langa's nolo contendere plea is subject to the same analysis as a guilty plea.  *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983) ("The fundamental constitutional consideration when a petitioner challenges his plea is whether it was voluntary.  The rule is the same for pleas of guilty or *nolo contendere*."). *See also Florida v. Royer*, 460 U.S. 491, 495 n.5 (1983) (stating that "[u]nder Florida law, a plea of nolo contendere is equivalent to a plea of guilty.").

*Procedural Default Due To Failure To Exhaust Federal Claim In State Court*

First, the federal claims raised in Grounds One, Three(A), Four, Five, and Eight, which directly or implicitly challenge the voluntariness of Langa's plea, are unexhausted due to Langa's failure to expressly raise the federal components of these claims in state court. (Dkt. 24, Ex. 11.)  Langa cannot return to state court to file an untimely, successive postconviction motion.   Fla. R. Crim. P. 3.850(b), (h).   Accordingly, any unexhausted federal claims raised in the habeas petition are procedurally defaulted.  *See Smith*, 256 F.3d at 1138.[3]

*Procedural Default Due To State Court's Resolution Of Claims On An Independent And Adequate State Procedural Basis*

Furthermore, even assuming the state court may have considered these allegations of involuntary plea and ineffective assistance as federal claims, they are still procedurally defaulted. Ground Two, which contains an exhausted federal claim, is also procedurally defaulted.   This is because the state court resolved Langa's federal claims on an

---

[3] The response does not address Langa's failure to raise a federal claim with respect to Grounds One, Four, Five, and Eight.  Notwithstanding the default of these grounds on this basis, however, the claims are without merit. In Ground One Langa claims that no factual basis existed for the trafficking charges.  He claims that Glenn, the pharmacist listed as the victim of both charges, untruthfully told law enforcement that she provided him with oxycontin.  He asserts that Glenn's statements are false because after he ingested the pills on one of these occasions and was taken to the hospital, his blood tests showed no presence of oxycontin. Langa admitted the facts against him. *United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) (a guilty plea admits all the elements of a formal criminal charge).  Moreover, he has not offered any evidence in support of his factual assertion that Glenn lied about the substance she provided him, rendering his claim speculative and unsubstantiated. Finally, the results of his blood tests fail to prove that he did not at some point possess the oxycontin, as he admitted.  In Ground Four, Langa alleges counsel was ineffective for not having his competency evaluated and determining whether he could knowingly enter a plea.  This claim is without merit because, as discussed in Ground Three(B), *infra*, Langa does not show that he was incompetent to proceed with the plea.  The record refutes Ground Five, in which Langa asserts that his plea was involuntary because he did not understand his alternatives.  Langa understood that he gave up his right to a trial, and counsel told the court that he was not interested in a trial. (Dkt. 24, Ex. 2, pp. 89, 97.)  Ground Eight, in which Langa asserts that counsel did not review with him the elements of the crimes and ensure he understood the nature of the offense, is also refuted by the record.  Langa told the court that counsel addressed with him what evidence the State would need to present to prove the charges against him. (*Id.*, pp. 98-99.)  None of these grounds warrants relief.

independent and adequate state procedural basis.

The argument raised in Ground Two of the federal habeas petition was presented in Langa's May 1, 2012 Rule 3.800(a) motion to correct illegal sentence.  In denying the motion, the state court found that Langa's assertion was not cognizable in a Rule 3.800(a) motion because it involved a factual issue that could not be determined from the face of the record. (Dkt. 24, Ex. 18, p. 57.)[4]  The state court further found that Langa's claim could not be considered under Rule 3.850 because it would be untimely under that rule. (*Id.*)[5]  A motion must be filed under Rule 3.850 no later than two years after the judgment and sentence became final, unless an exception to this time limitation applies.  Fla. R. Crim. P. 3.850.

The remaining arguments presented in Langa's federal habeas petition were raised in his April 12, 2011 Rule 3.850 postconviction motion.  The state court found the motion untimely under Rule 3.850 because more than two years had passed since Langa's conviction and sentence became final and he did not establish the applicability of any exception to the time limitation. (Dkt. 24, Ex. 12.)  Therefore, although its orders reflect the claims were cognizable under Rule 3.850, the state court did not consider the claims on their merits because they were not raised before the two-year filing deadline expired.

A federal habeas petitioner's failure to present a claim in accordance with state procedural rules generally precludes federal habeas review of the claim. *Coleman v.*

---

[4] *See* Fla. R. Crim. P. 3.800(a) ("A court may at any time correct an illegal sentence imposed by it . . . when it is affirmatively alleged that the court records demonstrate on their face an entitlement to that relief . . .").

[5] Unlike Rule 3.800(a), Rule 3.850 provides for evidentiary hearings, thus allowing for findings of fact by the court.  *See* Fla. R. Crim. P. 3.850(f)(8).

*Thompson*, 501 U.S. 722(1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir.2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). "However, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir.2001). A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying upon a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair manner." *Id.* (citing *Card v. Dugger*, 911 F.2d 1494 (11th Cir.1990)).

The state court applied a state procedural rule setting forth a time limit to bring postconviction claims. Rule 3.850 clearly provides that, absent specific exceptions, claims must be raised under that Rule within two years of the date the judgment and sentence become final. Fla. R. Crim. P. 3.850(b). Langa makes no allegation or showing that this subsection of the Rule is not firmly established and regularly followed.[6] The state appellate court approved the postconviction court's application of this procedural rule when it affirmed the orders rejecting both Langa's third Rule 3.850 motion and his Rule 3.800(a) motion. (Dkt. 24, Exs. 15, 20.) Accordingly, Langa's arguments are procedurally defaulted because

---

[6] *See Walker v. Martin*, 562 U.S. 307, 316 (2011) (to be considered adequate, a state procedural bar must be firmly established and regularly followed).

they were rejected on an independent and adequate state procedural ground. *See Harris*

*v. Reed*, 489 U.S. 255, 262 (1989) (independent and adequate state procedural default

bars review of a federal claim unless petitioner meets cause and prejudice or fundamental

miscarriage of justice exception).

<u>Langa Does Not Overcome The Procedural Default Of Any Claims</u>

Apparently recognizing the procedural default of his claims, Langa asserts that he

meets the cause and prejudice exception to overcome the default.   He alleges that four

factors impeded his ability to properly raise his claims to the state postconviction court: his

mental health status; the Clerk of the state Circuit Court's refusal to provide him with

documentation necessary to bring his claims; his lack of legal education; and the state

court's refusal to accept the claims as timely.   However, none of these reasons is sufficient

to establish cause.

*Mental Health*

First, Langa argues that "his severe mental illness pre-arrest, pre-trial and post-

conviction is an 'extraordinary circumstance which was beyond his control' and said illness

completely precluded him from being able to timely file his constitutional claims to the State

within the two-year time limitation." (Dkt. 1, p. 32.) In his reply, Langa explains that he was

"in a continual mental state of hopelessness, suicidal ideation, experienced debilitating

fatigue (physical and mental), had virtually no present ability to concentrate on or

comprehend complex written or oral subject matter and concepts; was under extreme

stress (which further aggravated underlying mental instability) and could only perform the

most basic of functions." (Dkt. 33, p. 15.) Langa asserts that, at some point, he was found

to be disabled by the federal government due to psychiatric conditions, and that he was

committed to a psychiatric hospital under the Baker Act[7] following an attempted suicide. (*Id.*)

Langa states that he took a large amount of pills in a suicide attempt following one of the robberies.  He attaches to his federal habeas petition documentation from behavioral health centers and the Department of Corrections.  A psychiatric evaluation and comprehensive mental status examination report dated July, 14, 2007,[8] reflects Langa's suicidal ideations and diagnoses of major depressive disorder and opiate withdrawal.  (Dkt. 1-1, p. 62.)  A risk assessment also dated July 14, 2007, provides that Langa experienced depression, a drug problem, psychosocial stressors, and suicidality, and was a danger to himself.  (Dkt. 1-1, pp. 64-65.)

A May 12, 2011 Department of Corrections' Summary of Outpatient Mental Health Care provides that Langa's treatment focused on major depression and anxiety.  It noted that Langa complied with mental health treatment and illustrated progress from month to month.  The initial diagnoses of "major depres. unspecified," "alcohol dependence," and "plysubstance [sic] dependence" were not listed under the "ending diagnosis" section.  (*Id.*, p. 67.)  The report recommended "after-care follow-up," particularly for substance abuse and polysubstance abuse.  (*Id.*, p. 68.)

"Cause exists if there was 'some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule.'" *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

---

[7] §§ 394.451-.47891, Fla. Stat.  The Baker Act is also referred to as "The Florida Mental Health Act."

[8] It appears Langa was arrested on July 13, 2007.  (Dkt. 24, Ex. 11, Offense Incident Report.)

Courts have determined that a petitioner's mental health concerns must actually cause a procedural default of his claim to excuse the default.  *See Smith v. Newsome*, 876 F.2d 1461, 1465-66 (11th Cir. 1989) (petitioner's "general mental condition is not legal cause for his default" when he acted in a rational manner in state proceedings); *Farabee v. Johnson*, 129 Fed. App'x 799, 804 (4th Cir. 2005) ("It is not enough for a petitioner to show that there existed at the time of his procedural defaults certain conditions external to the defense; the petitioner must show that those external conditions actually 'impeded [his] efforts to comply' with procedural requirements and thus caused his default."); *Ervin v. Delo*, 194 F.3d 908, 916 (8th Cir. 1999) (because petitioner's "alleged depression did not hinder his ability to file a pro se postconviction motion," his depression "could not amount to cause excusing Ervin's procedural default"); *Holt v. Bowersox*, 191 F.3d 970, 974 (8th Cir. 1999) (for mental illness to constitute cause, "there must be a conclusive showing that mental illness interfered with a petitioner's ability to appreciate his or her position and make rational decisions regarding his or her case at the time during which he or she should have pursued post-conviction relief.").

Langa's allegation of cause is conclusory, and he has not demonstrated that his failure to timely bring his postconviction claims was caused by his mental health diagnoses or issues.  His first postconviction motion was timely filed under Rule 3.850.  (Dkt. 40, Ex. 25.)  His sole ground for relief in that motion is raised in an intelligible and coherent manner.  The state court readily discerned his allegation in its order denying the motion. (Dkt. 40, Ex. 26.)  Similarly, Langa's April 2009 jail credit motion is easily comprehensible and the state court's order reflects that it had no difficulty recognizing his claim.   Langa's behavior at the change of plea hearing also indicates that he acted rationally, participated

in the proceedings, and gave appropriate answers to the court's questions.  (Dkt.  24, Ex. 2.)

Langa does not establish that his mental health prevented him from prosecuting his postconviction claims or complying with state procedural requirements.  The only record documentation he submits that involves his mental state at and after the time of his conviction is the Department of Corrections' report.  This report provides no indication that during the two years to file a timely Rule. 3.850 motion,[9] Langa's mental health condition affected him such that he could not prepare and file a motion raising his federal claims. Langa has not demonstrated that his mental health condition caused the default of his claims.

*Clerk Of The State Circuit Court's Refusal To Provide Documents*

Langa asserts that the Clerk of the state Circuit Court's "consistent non-compliance with numerous Public Record requests for pertinent files, reports and other sources of information relevant to his case as well as misleading, erroneous presentations as to availability and associated costs of these records . . . only served to delay Petitioner[']s timely access to the necessary information to cogently assess, and present his valid constitutional claim." (Dkt. 1, p. 32.)  Specifically, he contends that the Clerk inaccurately informed his sister that a copy of the change of plea hearing transcript would cost $1,200.00 because it was 1,200 pages long.  (*Id.*, p. 33.)  He claims the Clerk's actions "lulled Petitioner into a futile expiration of his 2 year postconviction relief filing time." (*Id.*)

In determining cause, "[a]n external impediment includes 'interference by state

---

[9] The state court determined that Langa's deadline to file a timely Rule 3.850 motion expired on September 30, 2010.  (Dkt. 24, Ex. 12.)

officials' that prevented a petitioner from raising a claim." *Ward v. Hall*, 592 F.3d 1144, 1176 (11th Cir. 2010) (citing *Mize*, 532 F.3d at 1190).  Langa fails to establish that the Clerk's alleged non-compliance with public records requests constitutes cause to excuse the procedural default of his claims.  Langa's claim is too vague to warrant relief because it does not clarify or explain how any specific record documents were necessary to timely bring his claims.

Langa presented the claims raised in his federal habeas petition in an untimely manner in his April 12, 2011 postconviction motion and his May 1, 2012 motion to correct illegal sentence.  He did so with a limited number of supporting documents.[10]  Langa does not show that he could not have presented the claims timely without any documentation, because he fails to allege or demonstrate that a certain document contained information that enabled him to discern and bring a claim for relief.  Langa has not established that a lack of documentation constituted an external factor that impeded his ability to comply with state procedural rules and timely raise his federal claims in state court.  Therefore, he fails to show that the Clerk of the Circuit Court's alleged non-compliance with his records requests constitutes cause to overcome the default of his claims.

*Pro Se Status And Lack of Legal Knowledge*

Langa asserts that cause is established because he is a *pro se* litigant with no legal education or experience attempting to bring complex issues before the courts.  This

---

[10] Langa attached medical records and police reports to his motions.  He does not state when he obtained these reports and whether they were items he sought from the Clerk.  However, there is no indication that he received documentation from the Clerk or the state court when he filed these untimely claims.  Langa's requests seeking documentation from the state court  were denied after he raised his claims in his April 12, 2011 Rule 3.850 motion and his May 1, 2012 Rule 3.800(a) motion.  (Dkt. 24, Ex. 18, pp. 73-86; Dkt. 33-3, p. 4.)  Additionally, the change of plea hearing transcript was prepared and filed after he submitted these motions.  (Dkt. 24, Ex. 2.)

allegation is insufficient to establish cause to overcome the procedural default of Langa's federal claims.  *See McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992) (petitioner's lack of legal education did not constitute cause to overcome procedural default of untimely claims); *Harmon v. Barton*, 894 F.2d 1268, 1275  (11th Cir. 1990) (*pro se* status does not suffice to establish cause); *Smith*, 876 F.2d at 1465 (11th Cir. 1989) (illiteracy, lack of education, and failure to act or think like an attorney do not amount to cause).

*State Court's Refusal To Accept Claims As Timely*

The state court denied Langa's claims as untimely filed under Rule 3.850.  Langa asserted in bringing his third Rule 3.850 motion that his claims should be considered due to his mental health issues, lack of documents from the Clerk, and lack of legal knowledge. (Dkt. 24, Ex. 11, pp. 1-6.)   However, it was not the state court's rejection of his postconviction claims as untimely that prevented Langa from bringing his federal claims within the time permitted by Rule 3.850.  Therefore, he fails to show that the state court's adherence to the time limitation of Rule 3.850 amounts to cause to excuse his procedural default.

Accordingly, Langa has not established cause and prejudice to overcome the procedural default of the claims presented in his federal habeas petition.  He does not argue or demonstrate that the fundamental miscarriage of justice exception applies. Consequently, his procedurally defaulted claims are barred from federal habeas review.

<u>Allegation Of Substantive Due Process Violation Based on Langa's Alleged Incompetency To Enter A Plea</u>

In Ground Three(B), Langa asserts that he raises a "substantial" competency challenge and claims that his federal due process rights have been violated because "his

competency was in doubt" when he was prosecuted.  (Dkt. 1, p. 16.)  The Court interprets Langa's argument as raising a substantive due process claim that he was incompetent to proceed when he entered his plea.  This claim is not considered procedurally defaulted. *See Wright v. Sec'y, Dep't of Corr.*, 278 F.3d 1245, 1258-59 (11th Cir. 2002) ("The district court's ruling that Wright had procedurally defaulted his substantive due process mental competency claim is contrary to the law of this circuit that such claims generally cannot be defaulted.").  Langa makes similar allegations to those offered in support of his cause allegation discussed above, emphasizing that he was involuntarily hospitalized under the Baker Act.  However, Langa has not established that he was incompetent to proceed when he entered his plea.

The conviction of a mentally incompetent defendant violates due process.  *Pate v. Robinson*, 383 U.S. 375 (1966).  The federal standard for competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him."  *Dusky v. United States*, 362 U.S. 402, 402 (1960).  *See also Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.").  The standard governing competency to enter a valid guilty plea is the same as that for competency to stand trial.  *Godinez v. Moran*, 509 U.S. 389, 398-99 (1993).  "[A] petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence."  *James v.*

*Singletary*, 957 F.2d 1562, 1571 (11th Cir. 1992).

Langa has not shown that he was incompetent to enter his plea. The record reflects that he acted rationally and responded appropriately to the court's questions during the change of plea hearing. Furthermore, he told the court that his diagnoses for depression and anxiety had no effect on his decision to enter a plea, and that his judgment was not clouded by his medication. Thus, there is no indication from the record of this proceeding that he was incompetent to proceed under the *Dusky* standard.

The reports about his mental health following his arrest were made one year before his July 28, 2008 change of plea and therefore do not address his mental state when he pleaded to the charges. A history of mental instability does not demonstrate incompetency without a specific showing of how such issues generated a substantial doubt of a petitioner's competency at the time. *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) ("[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.") (quoting *Card v. Singletary*, 981 F.2d 481, 487-88 (11th Cir. 1992)). Furthermore, a defendant's use of psychiatric drugs is relevant but not determinative to establishing incompetency. *Sheley v. Singletary*, 955 F.2d 1434 (11th Cir. 1992). Because Langa has not demonstrated that he was incompetent to enter his plea, he is not entitled to relief on this portion of Ground Three.

Any claims not specifically addressed herein have been deemed to be without merit.

It is therefore

**ORDERED** that Langa's petition for writ of habeas corpus is **DENIED**. The Clerk is directed to enter judgment against Langa and to close this case.

It is further **ORDERED** that Langa is not entitled to a certificate of appealability ("COA").   A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition.  28 U.S.C. § 2253(c)(1).  A district court must first issue a certificate of appealability (COA).  *Id.*  "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Langa "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennara v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-Ei v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Langa has not made this showing.  Finally, because Langa is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on February 14, 2017.

Charlene Edwards Honeywell
Charlene Edwards Honeywell
United States District Judge

<u>Copy to:</u>
Stephen C. Langa
Counsel of Record